**L. A. Mason, Appellee, v. Chicago & Northwestern Railway Company, Appellant.**

**Gen. No. 34,886.**

Opinion filed October 9, 1931.

NELSON J. WILCOX, NELSON TROTTMAN and I. C. BELDEN, for appellant.

No appearance for appellee.

MR. JUSTICE KERNER delivered the opinion of the court.

Plaintiff sued defendant to recover for loss and damage alleged to have been caused by reason of delay in the shipment of a car of cattle from Wakefield, Nebraska, to the Union Stock Yards, Chicago. The case was tried before the court without a jury. Finding for plaintiff and judgment against the defendant for $375.35. To reverse this judgment the defendant has appealed. Plaintiff has not appeared or filed a brief in this court.

The statement of claim sets up a contract entered into at Wakefield, Nebraska, on or about September 27, 1927, whereby defendant undertook to carry within a reasonable time a car of live stock from Wakefield,

Nebraska, to the Union Stock Yards, Chicago; the delivery of the car to the carrier; the failure of the carrier to deliver the shipment at destination within a reasonable length of time; the allegation that the car should have arrived for the market of September 29, 1927, in good condition, but did not arrive until September 30, 1927, greatly reduced in weight; and the damages, which are alleged to have amounted to $375.35. The defendant's affidavit of merits alleges that the shipment was transported and delivered at destination promptly, without negligence, without unreasonable or unnecessary delay and strictly on schedule time; and that the shipment was not due to arrive in time for the market of September 29, 1927, and was not due at destination until the time it did arrive.

It appears from the evidence that Wakefield is about 50 miles west of Sioux City, Iowa, on a branch of the Chicago, St. Paul, Minneapolis and Omaha Railroad. September 27, 1927, at about 4 p. m., plaintiff loaded a car of about 18 cattle for shipment to the Union Stock Yards, Chicago. The car moved from Wakefield that same afternoon on the regular train, and arrived at Sioux City the same day at 7:10 p. m.; that evening it moved out on the defendant's Sioux City division train No. 254, scheduled to leave Sioux City at 7:45 p. m. to Maple River, Iowa, and thence to Boone, Iowa. The schedule of the Sioux City division shows that this train No. 254 was the first available train to leave Sioux City in the evening after the arrival of the car in question. From Maple River to Boone, the schedule shows this train as No. 354, and shows it was scheduled to leave Maple River at 2:55 a. m. and to arrive at the Boone freight yards at 5:45 a. m.; it arrived at Boone at 5:22 a. m. At Boone it was broken up, inspected, classified and consolidated with train No. 122, which came from Omaha and the west. These trains after being consolidated, were operated from Boone to Clin-

ton as the second section of train No. 254, and scheduled to leave Boone at 6:15 a. m. and to arrive at Clinton, Iowa, at 4:15 p. m. This was the first available train to Boone after 5:45 a. m. On the day the car arrived at Boone, there was a delay at that point but not sufficient to cause the car to miss the next connection at Clinton, or in any way to affect the time of ultimate arrival. It took four hours to reclassify trains 354 and 122 at Boone, and make them into second 254. The time necessary to classify each train would ordinarily be about one hour and a half. On this day, train second 254 left Boone at 9:50 a. m. and it arrived at Clinton at 6:50 p. m. two and a half hours after the schedule time. The Federal Statutes (section 1, ch. 3594) require live stock to be unloaded for feed, water and rest once every 36 hours; this was done at Clinton, and after being fed, watered and rested, reloaded. The first available train out of Clinton after 4:15 p. m. for Chicago was scheduled to leave at 8:00 p. m. so that the shipment arrived at Clinton in time to make that connection had it been transported from Clinton to Chicago without being unloaded at Clinton. From Clinton the shipment was transported to defendant's terminal yards near Chicago, and from the terminal yards, by usual switching operations, to the Union Stock Yards, arriving at 3:15 a. m. September 30, 1927.

It appears from the testimony of plaintiff and seven other shippers that the usual and customary time for delivery at destination was in time for the second morning's market; that in certain specified instances, five of which were in prior years, and six in subsequent years, cars of cattle have been moved from Wakefield without being unloaded and in time for the second morning's market; that the ordinary and usual customary time required to move a car from Sioux City to the Union Stock Yards was from 30 to 35

hours. The schedule time from Sioux City to the yards was 35 hours and 30 minutes. A car loaded at 7: 00 p. m. might overrun 36 hours. It also appears from the evidence that where special circumstances or the volume of business justifies the operation of extra trains, or where conditions are favorable, there are instances where particular shipments may be moved faster than the schedule; that schedules are made to take care of the general normal traffic with a view of fitting train movements in with the proper operation of the railroad and represent the average running time from day to day and from year to year along the lines of practical railroad operation and are made up on the basis of normal operations. It also appears from the evidence that while trains 354 and 122 were being broken up and consolidated at Boone, two trains left Boone, one at 7: 15 a. m. and the other at 9: 25 a. m. The train which left at 7: 15 a. m. was a solid fruit train which was classified as a ''main tracker,'' that is a train which had already been classified so that it was only necessary at Boone to change the crew and engine, and that it would not have been practical to have placed a car of stock in this train. The other train left at 9: 25 a. m. and was the first section of No. 254 which carried 56 cars. This was also a ''main tracker'' originating at Council Bluffs and was operated thereafter without reclassification.

Plaintiff proceeds on the ground of negligence in that he alleges that defendant undertook to carry the cattle within a reasonable time and that the defendant breached this obligation. It is the duty of a common carrier to transport live stock within a reasonable time. This was an interstate shipment and was governed by federal law, and where negligence is charged the negligence must be established affirmatively by the plaintiff. (*New Orleans & N. E. R. Co. v. Harris,* 247 U. S. 367.) In the case of *Murphy v. Illinois Cent. R.*

*Co.*, 238 Ill. App. 553, 558, it was said that "the burden of proof was upon appellee to show a 'delay' caused by the negligence of appellant." Negligence is a positive wrong, and the burden rests upon the party averring it to establish the fact through direct evidence or by giving in evidence such facts and circumstances as will afford a reasonable inference to that effect.

Plaintiff testified that he had shipped a good many shipments over a period of 13 years; that the usual and customary time was from 34 to 36 hours. Other shippers testified for the plaintiff as to particular shipments. No showing was made as to the conditions under which they were made, nor whether the conditions and circumstances at the time of these shipments were comparable with the conditions and circumstances existing at the time plaintiff's shipment moved. The cattle arrived at the Union Stock Yards on September 30, 1927, at 3:15 a. m. which, according to plaintiff's contention, was 22 hours late. This condition of the record did not tend to show that the defendant was guilty of any negligence in failing to have the shipment go forward sooner than it did. To render a carrier liable the delay must result from the carrier's negligence. In *Mason v. Chicago & Alton R. Co.* (Mo. App.), 247 S. W. 243, 244, the court said:

"Plaintiff did not show affirmatively that the delay in the transportation was caused by any negligence of the defendant, but merely contented himself with the showing that there was a delay, without showing any facts from which it could be reasonably inferred that the delay was due to defendant's negligence." And in *Parsons v. Chicago, B. & Q. R. Co.* (Mo. App.), 300 S. W. 324, 325, it was said: "No negligence whatever was proved in connection with this delay and we think that the mere fact that the shipment was delayed from six to seven hours and fifteen minutes between North Judson and Croxton, in view of the

great distance between these two points, is not of itself sufficient to make out a *prima facie* case of negligence on the part of defendant although the delay was not explained by the defendant.'' (See also *Fairley v. Chicago, R. I. & P. Ry. Co.*, 32 S. W. [2d] 109.)

The plaintiff having failed to establish a breach of defendant's duty as a carrier, by affirmative proof of negligence, we are of the opinion that the defendant is not liable, and that the judgment appealed from cannot stand.

For the reasons stated the judgment of the municipal court will be reversed with a finding of fact.

*Reversed with a finding of fact.*

Finding of fact: We find as a fact that defendant was not negligent in the transportation of the car of 18 cattle from Wakefield, Nebraska, to the Union Stock Yards, Chicago.